# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO TORRES, | Case No. 1:15-cv-0575-DLB |
| Plaintiff, | |
| v. | ORDER DISMISSING CERTAIN DEFENDANTS AND CLAIMS FOR FAILURE TO STATE A CLAIM |
| GUTIERREZ, et al., | |
| Defendants. | |

Plaintiff Gustavo Torres ("Plaintiff"), a state inmate in the custody of the California Department of Corrections and Rehabilitation, is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on April 15, 2015. He names Acting Warden J. Gutierrez, Sgt. G. Arrellano, CO R. Montanez and Dr. Abrams as Defendants.[1]

On June 5, 2015, the Court screened Plaintiff's complaint and ordered him to either file an amended complaint, or notify the Court of his willingness to proceed only on the cognizable claims against Defendants Arrellano and Montanez.

On July 17, 2015, Plaintiff notified the Court that he would not amend, and that he was willing to proceed only on his cognizable claims.

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on May 13, 2015.

A.      **SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.     ALLEGATIONS IN COMPLAINT**

Plaintiff is currently incarcerated at Corcoran State Prison.  The events at issue occurred while he was housed at the California Correctional Institution ("CCI") in Tehachapi, California.

Plaintiff alleges that on July 28, 2014, he reported his safety concerns to Sgt. Escartega. Plaintiff did not want to share a cell with just any inmate because of his sex charges and his prior problems with cellmates.  He requested that he be housed with inmates with the same charges so that he could avoid more trouble.  However, COs at CCI kept pressing Plaintiff to take a cellmate and ignored his safety concerns.

On August 5, 2014, Sgt. Barboza issued Plaintiff a 115 for refusing a cellmate, though he failed to counsel Plaintiff prior to issuing the 115.  Sgt. Barboza also falsely stated that Plaintiff was not a participant in the Mental Health Program.

Due to the 115, Plaintiff was placed in a management cell for 50 days.  During that time, he was deprived of usually authorized items, such as a clean mattress, clean bedding, reading material, forms to appeal the 115 and writing materials.  Plaintiff alleges that Defendant Arrellano was responsible for Plaintiff's placement in the management cell and deprived him of the usual items as punishment for refusing a cellmate for safety concerns.  Plaintiff was not given a proper mattress and had to sleep on the floor for 50 days, causing back and neck pain.  He was also not given clean sheets or a bar of soap to do his own laundry.

While in his management cell, Plaintiff asked to be housed with an inmate with the same sex-related charges, or to be put on single cell status.  Officers ignored his requests and indicated that there was no reason why Sensitive Needs Yard inmates cannot cell together.

On September 15, 2014, Defendant Abrams took Plaintiff off his medications, stating that Plaintiff did not need them.  Plaintiff alleges that he needed the medication because he is mentally disturbed and suffers from mental distress, depression, paranoia and anxiety.

On September 19, 2014, Defendant Montanez issued Plaintiff another 115 for refusing a cellmate.  Plaintiff alleges that COs were trying to make him share a cell with Inmate Duran, a gang member who would have been required to read Plaintiff's paperwork.  Plaintiff refused Inmate Duran to prevent trouble and a possible assault.

3

1    On September 26, 2014, Sgt. Martinez and Montanez gave Plaintiff a cellmate, and
2 Defendant Montanez threated Plaintiff with another 115 if he refused.  Defendant Montanez told
3 Plaintiff that Inmate Diaz was also a sex offender and Plaintiff therefore agreed to cell with him.
4 However, a week later, Inmate Diaz told Plaintiff that he was not a sex offender, and that he could
5 not live with a sex-offender.  Diaz asked to see Plaintiff's paperwork and when Plaintiff refused,
6 Diaz became upset and threatened Plaintiff's safety.

7    On October 4, 2014, Inmate Diaz tried to assault Plaintiff for refusing to show his
8 paperwork.  As they fought, Plaintiff cut Diaz in the face with a razor blade while he was trying to
9 defend himself.  Plaintiff contends that Defendant Montanez lied about Diaz just so he could give
10 Plaintiff a cellmate, in violation of his Eighth Amendment rights.

11    Plaintiff also contends that Defendant Abrams is to blame for the fight because he denied
12 his medications and he was feeling depressed and hopeless.  Plaintiff alleges that Defendant
13 Abrams was careless and unprofessional, and acted with deliberate indifference to Plaintiff's
14 mental health needs.

15    On October 8, 2014, Defendants Arrellano and Montanez continued to harass Plaintiff by
16 searching his cell without cause when Plaintiff was at his mental health appointment with
17 Defendant Abrams.  Plaintiff contends that there was no reason to search his cell because it had
18 already been searched twice after the incident with Inmate Diaz.  They took some of Plaintiff's
19 personal books and exchanged his good mattress for a "torn and stinky" one.  ECF No. 1, at 7.
20 Plaintiff contends that this was retaliation.

21    On October 16, 2014, Defendant Montanez continued to harass Plaintiff by searching his
22 cell without cause in retaliation for Plaintiff telling Defendant Gutierrez of CO misconduct during
23 committee.  However, Plaintiff was accused of lying.  Plaintiff contends that Defendant Gutierrez
24 is responsible for training his COs.

25    On October 26, 2014, during his 115 hearing, Plaintiff alleges that Defendant Montanez
26 and CO Delgado verbally assaulted him by making harsh comments about his offenses.  Upon
27 escort to his cell, Defendant Montanez threatened Plaintiff by telling him that he was "just a
28 fucking rapist and a woman beater," and that he'd like to see Plaintiff fight him.  ECF No. 1, at 7.

4

1  He ordered his fellow COs to hold Plaintiff against the wall while he searched Plaintiff's cell for a
2  fourth time in two weeks.  Plaintiff contends that Defendant Montanez violated his rights by
3  continuously harassing him and threatening his safety.

4  On October 28, 2014, Plaintiff was denied a move and had a mental breakdown.  Plaintiff
5  tried to commit suicide and was taken to the suicide unit for care.  Plaintiff believes that he was
6  being retaliated against for his crimes against society.  Plaintiff continued to request his
7  medications, but Defendant Abrams denied mental health care.  During one appointment, Plaintiff
8  asked Defendant Abrams what would happen if he went crazy on his cellmate because he didn't
9  have his medications.  Defendant Abrams told Plaintiff that "he may have to do what he had to
10 do."  ECF No. 1, at 9.

11 On November 2, 2014, Plaintiff filed a staff complaint about these issues, but it was
12 cancelled with the pretext that Plaintiff refused to be interviewed on December 6, 2014.  Plaintiff
13 states that he was never asked to leave his cell for an interview.

14 A second complaint about the same issues was supposed to be mailed on January 28, 2015.
15 However, on January 29, 2014, Defendant Montanez came to Plaintiff's door holding Plaintiff's
16 mail and demanded to know why Plaintiff was filing complaints against him.  Defendant
17 Montanez told Plaintiff that he should have learned his lesson.  Plaintiff alleges that Defendant
18 Montanez denied Plaintiff the right under state law and CDCR rules to communicate
19 confidentially with the court, attorneys and public officials.  Plaintiff believes that this was done in
20 retaliation for Plaintiff's crimes against society.

21 Plaintiff alleges that Defendant Montanez's disposition of his documents prevented him
22 from obtaining relief from the institution's appeal system.  He believes that Defendant Montanez
23 went through his legal mail before it left the institution.

24 For relief, Plaintiff requests an injunction to prevent officials at CCI from causing further
25 harm and monetary damages.

26 ///
27 ///
28 ///

5

**C.     DISCUSSION**

      1.     Defendant Gutierrez

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

      In his complaint, Plaintiff alleges that Defendant Gutierrez violated his rights because he was responsible for the training the COs with whom Plaintiff had issues. A supervisor's failure to train subordinates can give rise to individual liability under Section 1983 where the supervisor's failure amounts to deliberate indifference to the rights of persons with whom the employees are likely to come into contact. See Canell v. Lightner, 143 F.3d 1210, 1213-14 (9th Cir.1998). To impose liability, Plaintiff is required to show that the inadequate training actually caused the constitutional violation, and that the violation would have been avoided had the employees been properly trained. Id. at 389-91; Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir.2001) (citations and internal quotations omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, 'though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'" Id. (quoting Connick v. Thompson, 131 S.Ct. 1350, 1360-61 (2011)). In this "narrow range of circumstances," a single

incident may suffice to establish deliberate indifference where the violation of constitutional rights is a "highly predictable consequence" of a failure to train because that failure to train is "so patently obvious." Connick, 131 S.Ct. at 1361.

Plaintiff has not made allegations sufficient to state a claim against Defendant Gutierrez. He has not shown that any alleged inadequate training actually caused the violations, and that any violations would have been avoided had the employees been property trained.

### 2. Eighth Amendment- Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff contends that Defendant Abrams denied him mental health treatment by taking him off his medications. Contrary to Defendant Abram's decision, Plaintiff believed that he needed the medications, and he alleges that he became depressed and hopeless as a result. This wasn't a case where Plaintiff was not receiving *any* treatment, however, as he continued to be seen by Defendant Abrams. Rather, Plaintiff simply disagrees with Defendant Abrams decision to take him off of his medications. "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to

deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff has not alleged that Defendant Abram's treatment decisions were medically unacceptable under the circumstances and that Defendant Abram chose the course of treatment in conscious disregard of an excessive risk to Plaintiff. Plaintiff alleges that he once asked Defendant Abrams what would happen if he went crazy on his cellmate, and Defendant Abrams responded that Plaintiff "may have to do what he had to do." Plaintiff's statement to Defendant Abrams does not, however, show that Defendant Abram's decision to take him off of his medications was done in conscious disregard of an excessive risk to Plaintiff. It was a treatment decision, and Plaintiff's disagreement with the decision does not state a claim under the Eighth Amendment.

        3.      Eighth Amendment- Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730,

8

737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff alleges that Defendant Arrellano deprived him of certain items while he was in the management cell.  Plaintiff states a claim insofar as he alleges that Defendant Arrellano deprived him of a clean mattress and clean sheets for fifty days.  Deprivation of the remaining items, including reading materials, forms to appeal and writing materials, do not rise to the level of an Eighth Amendment violation.

        4.       Eighth Amendment- Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.  Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Plaintiff's allegations center on his contention that he could not be housed with certain inmates because of his sex-related charges.  He alleges that if he is housed with inmates who do

1 not have such charges, he could be subject to assault. In this regard, Plaintiff alleges that
2 Defendant Montanez lied to him about Inmate Diaz and Inmate Diaz subsequently assaulted
3 Plaintiff. This states a claim under the Eighth Amendment against Defendant Montanez.

### 5. Eighth Amendment- Excessive Force

For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff alleges that Defendant Montanez verbally assaulted him and threatened him. However, verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Plaintiff therefore fails to state a claim against Defendant Montanez based on verbal abuse and/or threats.

### 6. First Amendment Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Insofar as Plaintiff alleges that Defendants retaliated against him because of his "crimes against society," he does not state a claim in the context of the First Amendment. Plaintiff's "crimes against society" are not constitutionally protected conduct and do not support a retaliation claim.

Plaintiff also alleges that Defendant Montanez conducted a retaliatory cell search on October 16, 2014, after Plaintiff reported CO misconduct. This states a claim under the First Amendment.

As to the October 8, 2014, search by Defendants Arrellano and Montanez, Plaintiff does not link the searches to any protected conduct. Although he states that the searches were retaliatory, he does not state what he did to cause the alleged retaliation. He therefore fails to state a claim for the October 8, 2014, search.

      7.    Appeals Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Accordingly, Plaintiff fails to state a claim against Defendant Montanez for preventing him from obtaining relief from the prison appeals system.

///

///

8. <u>Violations of CDCR Regulations and State Law</u>

Plaintiff's vague claim that he was prevented from confidentially communicating with courts, attorneys and public officials does not state a claim for relief. There is no specific state law that requires that inmates be permitted to correspond confidentially with certain sources.

Moreover, the Court is unaware of any authority for the proposition that there exists a private right of action available to Plaintiff for violation of Title 15 regulations and ample district court decisions hold otherwise. E.g., <u>Vasquez v. Tate</u>, No. 1:10-cv-1876 JLT (PC), 2012 WL 6738167, at *9 (E. D. Cal. Dec. 28, 2012); <u>Davis v. Powell</u>, 901 F.Supp.2d 1196, 1211 (S.D. Cal. 2012); <u>Meredith v. Overley</u>, No. 1:12-cv-00455-MJS (PC), 2012 WL 3764029, at *4 (E.D. Cal. Aug. 29, 2012); <u>Parra v. Hernandez</u>, No. 08cv0191-H (CAB), 2009 WL 3818376, at *8 (S.D.Cal. Nov. 13, 2009); <u>Davis v. Kissinger</u>, No. CIV S-04-0878 GEB DAD P, 2009 WL 256574, at *12 n.4 (E.D.Cal. Feb. 3, 2009), adopted in full, 2009 WL 647350 (Mar. 10, 2009).

9. <u>Injunctive Relief</u>

When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Alvarez v. Hill, 667 F.3d 1061, 1063-64 (9th Cir. 2012); <u>Nelson v. Heiss</u>, 271 F.3d 891, 897 (9th Cir. 2001); <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368 (9th Cir. 1995); <u>Johnson v. Moore</u>, 948 F.2d 517, 519 (9th Cir. 1991).

In his request for relief, Plaintiff asks for injunctive relief to prevent COs at CCI from causing future harm at the hands of Plaintiff's cellmates. He requests the same relief in his April 15, 2015, "order to show cause for preliminary injunction." However, Plaintiff has since transferred to Corcoran State Prison, and his injunctive relief claims are now moot.

**D.   CONCLUSION AND ORDER**

The Court ORDERS that this action go forward on the following claims: (1) an Eighth Amendment conditions of confinement claim against Defendant Arrellano; (2) an Eighth Amendment failure to protect claim against Defendant Montanez; and (3) a First Amendment retaliation claim against Defendant Montanez.[2]

---

[2] The Court will instruct Plaintiff on service by separate order.

12

He does not state any further claims against any other Defendants, and Defendants Gutierrez and Abrams are DISMISSED from this action.

IT IS SO ORDERED.

Dated:   **June 18, 2015**                               /s/ *Dennis L. Beck*
                                                                   UNITED STATES MAGISTRATE JUDGE